UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

AMANDA L. WALDEN,

       Plaintiff,

    v.

VILLAGE OF NEW ATHENS, WILLIAM
O. RAINEY, BRYAN RAUSCH and
DENNIS BREITHAUPT,

       Defendants.

Case No. 10-cv-432-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the defendants' motion for summary judgment (Doc. 35). Plaintiff Amanda L. Walden has responded to the motion (Doc. 48).

**I.    Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. This standard is applied with special scrutiny in cases, such as employment discrimination cases, that often turn on issues of intent and credibility. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

## II.   Facts

Viewing the evidence and drawing all reasonable inferences in Walden's favor, the Court finds the following facts for the purpose of resolving the pending motion.

Walden began working as a probationary police officer for the Village of New Athens ("Village") Police Department in November 2007. At the time, Larry Kirk was the police chief, defendant William O. Rainey was one of Walden's superior officers, defendant Brian Rausch was president of the Village Police Commission, and defendant Dennis Breithaupt was mayor of the Village.

Before Walden started working, Rainey expressed his anger to the police force that another "girl" was going to be hired as an officer and polled the three male officers on the force about how they would feel having another "girl" in the department and backing them up in a bar fight. All three agreed they did not want another woman on the force, would not train her and would not back her up on a call. Nevertheless, Walden joined the force.

Walden was paid the rate set forth in a pay schedule contained in a municipal ordinance. The ordinance contained some wiggle room, however, in that it stated, "This timetable may be accelerated or the starting step position of new employees may be assigned at the discretion of the Village Board of Trustees." Village of New Athens Municipal Code of Ordinances, art. 6, § 1.6.9B. Walden did not receive any discretionary higher pay but believes that three similarly situated male officers did.

Walden was required to pay for her uniform up front, despite her request to then-Chief Kirk for an alternate payment arrangement, but another male officer was allowed to pay for his uniform in installments. Additionally, she was not provided the $450 uniform allowance called for by ordinance and offered to a male police officer.

Walden did not get the same amount of field training as male officers. Her training was cut short because the female officer training her became ill and then went to work for another police department, and the other male officers refused to train her.

While traveling to or from the St. Clair County jail, Walden responded to a call for back-up from a police officer in a neighboring police department. Unlike male colleagues who had responded to similar calls in similar situations, she was given a verbal reprimand for not following a particular route to and from the jail, a letter was placed in her personnel file, and she was required to write a statement how she spent her time when responding to the call. In addition, there was no route prescribed by any Village police policies, and Walden had never been instructed she must follow any particular route.

Walden was not allowed to use a Village police squad car to travel to an 80-hour training course. The course was conducted in two five-day sessions, so she would only need the car for two five-day periods. The reason given for this decision was that the squad car was needed at

the police station for other officers to use. Nevertheless, at the same time, another male officer was allowed to use a Village police squad car to travel to a five-day, 40-hour training session and to keep the car away from the police station for the entire training period. Additionally, another male officer was allowed to take a police squad car to attend a two-week training session for the entire period of time.

Walden spoke to Chief Kirk about the foregoing conduct that she believed was discriminatory and asked him to speak to the Village Board about the problem. However, before Chief Kirk could present the issue to the Board, he was removed from his position and replaced by Rainey. Neither the Village nor the Village Police Department had a sex discrimination policy despite Chief Kirk's request that the Village implement one in response to female police officers' complaints.

In June 2008, Walden missed five days of work due to an illness. On June 25, 2008, Rainey called her and asked her to submit a note from her doctor in accordance with the Village Police Department's policy requiring a doctor's note for any absence of at least three days. Walden told Rainey the note would be there within a few hours, contacted her doctor to request the note and went to the police station to pick up her paycheck. However, before the doctor could fax a note to the Village Police Department, Walden was fired. At the time, Breithaupt, Rausch and Rainey met with Walden and gave her a list of reasons for her termination: they were not happy with how she had handled one particular case, her absences, she did not need a job because she had applied for another part-time job at a neighboring police department, she did not meet the residency requirements, she had gone out of the district to provide back-up for a neighboring police department and she did not meet the "philosophies" of the department found "in [Rausch's] head." Later, the Village Police Department provided a written explanation of

her termination that relied solely on her failure to provide a doctor's note following her absences due to illness.

Walden was replaced by a male police officer who was less qualified than she was and was paid more. Walden has applied for but has been denied employment at several other police departments since her employment with the Village Police Department.

Walden filed a charge with the Equal Employment Opportunity Commission ("EEOC") complaining of allegedly discriminatory treatment. She received a right to sue letter, and in June 2010, she filed this lawsuit. In November 2010, she amended her complaint to allege a claim for sex discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* (Count I), the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.* (Count II), the equal protection clause of the Fourteenth Amendment (Count III), civil rights conspiracy law set forth at 42 U.S.C. §1985 (Count IV), and the Equal Pay Act, 29 U.S.C. § 206(d)(1) (Count V). The defendants now ask the Court for summary judgment on the grounds that Walden cannot show she was subject to sex discrimination, she exhausted her administrative remedies regarding her IHRA claim, or that the defendants conspired against her.

**III.    Analysis**

    A.    Counts I and III

To withstand a motion for summary judgment in a Title VII or § 1983 equal protection claim, a plaintiff may present direct proof of discrimination through direct or circumstantial evidence that she was the victim of intentional discrimination. *Radentz v. Marion County*, 640 F.3d 754, 756-57 (7th Cir. 2011); *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001). The direct and circumstantial evidence on file reveals animus against women, discriminatory treatment without good reason, and amorphous, shifting reasons for Walden's termination. This

evidence is sufficient for a reasonable jury to find the defendants intentionally discriminated against Walden on the basis of her sex.  Therefore, summary judgment is not warranted on Counts I or III.

      B.     Count II

The defendants ask the Court to dismiss Count II because Walden did not file a charge with the Illinois Department of Human Rights ("IDHR") before filing this lawsuit.  However, she was not required to do so because she filed a charge with the EEOC.  "A charge filed with the Equal Employment Opportunity Commission within 180 days after the date of the alleged civil rights violation shall be deemed filed with the [IDHR] on the date filed with the Equal Employment Opportunity Commission." 775 ILCS 5/7A-102(A-1).

      C.     Count IV

The defendants challenge Walden's ability to prove a conspiracy under 42 U.S.C. § 1985(3).  In order to establish a civil conspiracy claim under § 1985(3), a plaintiff must show "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002); *accord Alexander v. City of S. Bend*, 433 F.3d 550, 556-57 (7th Cir. 2006).  There must be "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions, and that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Green*, 281 F.3d at 665.  An agreement to inflict injury is essential to a conspiracy;  the alleged conspirators must have "acted with a single plan, the general nature and scope of which was known to each conspirator." *Id.*

Although the plaintiff does not directly address this contention in her response, the Court believes that it is not impossible for a reasonable jury to find, based on the communication among male police officers, their common animus against female police officers, their joint refusal to train Walden, and the joint action of Breithaupt, Rausch and Rainey to fire Walden, that there was a conspiracy to deprive Walden (and other female police officers) of their equal protection rights. Therefore, the Court will not grant summary judgment on Count IV.

D. Count V

The defendants argue that Walden cannot prevail on her Equal Pay Act claim because she was paid pursuant to a schedule contained in a municipal ordinance. The Equal Pay Act forbids an employer to pay workers of one sex less than workers of the opposite sex for doing the same work unless the pay differential is justified by other factors. *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 600 (7th Cir. 2001). To prove an Equal Pay Act violation, a plaintiff must show "(1) different wages were paid to employees of the opposite sex, (2) the employees perform equal work requiring equal skill, effort, and responsibility, and (3) the employees have similar working conditions." *Id.* If the plaintiff makes such a showing, the defendant has the burden of showing that the pay disparity was due to (1) a seniority system, (2) a merit system, (3) a system that measures work by production standards, or (4) some factor other than sex. *Id.* (citing 29 U.S.C. § 206(d)(1)).

There is evidence that Walden and her male colleagues performed equal work under similar working conditions. It is a closer call about whether males were paid more that she was under the Village's discretionary acceleration of pay policy. Walden has been unable to gather solid evidence of that disparity without testimony from Michelle Neff, a Village employee whom she has had trouble deposing. However, in light of other evidence of sex discrimination

in this case and an absence of any representation by the defendants that Walden was paid the same as other male officers, the Court is hesitant to grant summary judgment.  Accordingly, the Court will deny summary judgment on Count V as well and the details will be fleshed out at trial.

## IV.     Conclusion

For the foregoing reasons, the Court **DENIES** the defendants' motion for summary judgment (Doc. 35).  All counts will proceed to trial as currently scheduled.

**IT IS SO ORDERED.**
**DATED:  September 28, 2011**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**